UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ALAN M. ST. ONGE, o/b/o MICHAEL
NORMAN ST. ONGE (deceased),

      Plaintiff,

v.                                Case No. 2:19-cv-84-FtM-66NPM

COMMISSIONER OF SOCIAL
SECURITY

      Defendant.

―――――――――――――――――――――

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review of a denial of Social Security disability benefits. The Commissioner of the Social Security Administration filed the transcript of the proceedings (referred to as "Tr." followed by the appropriate page number), and the parties filed a Joint Memorandum (Doc. 23). As discussed in this report, the decision of the Commissioner should be reversed and remanded.

## I.    Social Security Act Eligibility and the ALJ Decision

### A.    Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a

continuous period of not less than twelve months.[1]  The impairment must be severe, making the claimant unable to do his previous work or any other substantial gainful activity that exists in the national economy.[2]

### B.    Procedural History

On April 28, 2015, Claimant Michael Norman St. Onge, who was represented by counsel throughout the process, applied for a period of disability and disability insurance benefits as well as supplemental security income. (Tr., pp. 1168-1181). Claimant asserted an onset date of December 1, 2014. (*Id.*, p. 1168). Claimant's application was denied initially on July 21, 2015, and upon reconsideration on September 21, 2015. (*Id.*, pp. 993, 994, 1011, 1012).

Administrative Law Judge Michael J. Kopicki ("ALJ") held a hearing on January 12, 2018. (*Id.*, pp. 917-958). The ALJ issued an unfavorable decision on March 29, 2018, finding Claimant not disabled from the alleged onset date through the date of decision. (*Id.*, pp. 806-817). On December 14, 2018, the agency's Appeals Council denied Claimant's request for review. (*Id.*, pp. 3-7). On February 5, 2019, Claimant asked the Appeals Council to reopen or reconsider its denial. (Doc. 23-1). Thereafter, Claimant submitted new evidence to the Appeals Council on March 13, 2019. After evaluating the new evidence, the Appeals Council

---

[1]  *See* 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.
[2]  *See* 42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

concluded on December 2, 2019 "that no change in the prior action [was] warranted." (Doc. 23-12).

Just six days after asking the Appeals Council to reconsider its decision to deny review, and about a month before submitting any new evidence to the Appeals Council, Plaintiff sought judicial review of the agency's final determination of December 14, 2018 by filing a Complaint with this Court on February 11, 2019. While awaiting both this Court's review and the agency's disposition of his parallel request for reconsideration, Plaintiff died on July 31, 2019 (Doc. 31-2). Claimant's eldest son, Alan M. St. Onge, was substituted as the party plaintiff. (Doc. 33). And the parties agree that the claim for supplemental security income extinguished upon the Claimant's death. (Doc. 32).

## C.    Summary of the ALJ's Decision

An ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277 (11th Cir. 2020) (citing 20 C.F.R. § 416.920(a)(1)). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in "significant numbers in the national economy."

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x. 931, 933 (11th Cir. 2015) (citing 20 C.F.R. §§ 416.920(a)(4), (c)–(g), 416.960(c)(2); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. §§ 404.900(b), 416.1400. Unlike judicial proceedings, SSA hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111, (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id*. Indeed, "at the hearing stage, the Commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id*. (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id*. (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is temporarily relieved of the burden of production during step five as to whether there are enough jobs the claimant can perform, the claimant otherwise has the burdens of production and persuasion

throughout the process. See *id*. at 1359; 20 C.F.R. § 404.1512 (providing that the claimant must prove disability); *see also Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983) ("The scheme of the Act places a very heavy initial burden on the claimant to establish existence of a disability by proving that he is unable to perform his previous work."); *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001) ("[T]he overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant.").

In this matter, the ALJ found Claimant last met the insured status requirements through December 31, 2018. (Tr., p. 809). At step one of the evaluation, the ALJ considered Claimant's work as an Uber driver and deferred a finding of substantial gainful activity and continued with the sequential evaluation. (*Id.*). At step two, the ALJ characterized Claimant's severe impairments as: "diabetes mellitus; history of right leg amputation, below the knee; coronary artery disease, status-post bypass surgery; hypertension; and obesity." (*Id.*, p. 810). The ALJ also considered Claimant's history of alcohol abuse and, although finding it a medically determinable impairment, he found it was not material because Claimant's impairments were not disabling, either alone or in combination with alcohol use. (*Id.*, pp. 810-811). At step three, the ALJ determined Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526,

416.920(d), 416.925, and 416.926. (*Id.*, p. 811).

As the predicate to step four, the ALJ arrived at the following RFC:

> After careful consideration of the entire record, I find that the claimant has the residual capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), with the following additional limitations: the claimant can lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; he can sit for six out of eight hours with normal breaks; he can stand and/or walk for a total of two hours with normal breaks; and he can never climb ladders, ropes, or scaffolds. The claimant can no more than occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. The claimant needs to avoid even moderate exposure to hazards, such as dangerous machinery and unprotected heights.

(*Id.*, p. 812). Consequently, the ALJ found Claimant could perform his past relevant work as a financial planner and vice president of a financial institution because such work does not require the performance of work-related activities precluded by Claimant's RFC. (*Id.*, pp. 816-817). The ALJ therefore concluded that, from the alleged onset date of December 1, 2014 through the March 29, 2018 issuance of the ALJ's decision, Claimant was not under a disability within the meaning of the Social Security Act. (*Id.*).

## II. Analysis

Plaintiff's appeal presents the following issues:

(1)  Whether the ALJ's RFC was required to include Claimant's alleged non-exertional limitations of fatigue, pain, nausea, stress, and dizziness;

(2)     Whether the Appeals Council properly considered additional evidence submitted after the Appeals Council issued a Denial of Review, and whether additional evidence submitted to this Court for the first time warrants a Sixth Sentence remand; and

(3)     Whether the ALJ was properly appointed under the Constitution's Appointments Clause, and whether he had legal authority to hear and decide the case.

(Doc. 23, pp. 15, 22, 33). But the Court pretermits discussion of the first issue because, as discussed below, the second issue warrants reversal and remand for a disability analysis in light of additional evidence.

**A.     Whether the Appeals Council properly considered additional evidence submitted after the Appeals Council issued a Denial of Review, and whether additional evidence submitted to this Court for the first time warrants a Sixth Sentence remand**.

Pursuant to 42 U.S.C. § 405(g), a claimant may obtain review of a final decision of the Commissioner of Social Security by initiating a civil action in federal court within sixty days. Sentence four of Section 405(g) provides that the court, based upon the pleadings and the transcript of the agency record, may remand the cause for rehearing by entering a judgment reversing the decision of the Commissioner. And sentence six provides that the court may remand the case to the Commissioner for further action "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record." *Id*. When a federal court remands a case to the Commissioner: "Any issues relating to [the claimant's] claim may be considered by the administrative law

judge whether or not they were raised in the administrative proceeding leading to the final decision in [the claimant's] case." 20 C.F.R. § 404.983.

Plaintiff argues this case should be remanded based on the new evidence submitted to the Appeals Council in March 2019 and on the new evidence submitted for the first time to this Court. (Doc. 23, pp. 23-24, 28-30). Notably, by contending these records were mistakenly included in the administrative record, the Commissioner suggests none of the new evidence forms the basis of the agency's reviewable decision. (*Id.*, p. 30). And the Commissioner contends the evidence dated after the Appeals Council's decision does not meet the sentence six requirements. (*Id.*, pp. 30-33).

"Generally, a claimant is allowed to present new evidence at each stage of the administrative process, including before the Appeals Council." *Griffin v. Comm'r of Soc. Sec.*, 723 F. App'x 855, 857 (11th Cir. 2018) (citing 20 C.F.R. §§ 404.900(b), 404.970(b) (2016)). A court may review under sentence four a denial of review by the Appeals Council. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007). But new additional evidence presented to the Court and not to the administrative agency must be considered under a sentence six analysis. *Id.* at 1261. "Sentence six allows the district court to remand to the Commissioner to consider previously unavailable evidence; it does not grant a district court the power to remand for reconsideration of evidence previously considered by the Appeals

Council. Because evidence properly presented to the Appeals Council has been considered by the Commissioner and is part of the administrative record, that evidence can be the basis for only a sentence four remand, not a sentence six remand." *Id.* at 1269.

Sentence six remands are "entirely different" from sentence four remands. *Id.* at 1267. Sentence six presents a federal court "with the power to remand the application for benefits to the Commissioner for the taking of additional evidence upon a showing 'that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" *Id.* (quoting 42 U.S.C. § 405(g)). But the evidence, must be new and material and not a part of the administrative record, and Plaintiff must show good cause why this material was not incorporated in the administrative record. *Id.*

So to prevail under a sentence six review, Plaintiff must establish: "'(1) there is new, noncumulative evidence; (2) the evidence is material, that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for the failure to submit the evidence at the administrative level.'" *Enix v. Comm'r of Soc. Sec.*, 461 F. App'x 861, 863 (11th Cir. 2012) (internal quotations omitted) (quoting *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986)); *see also Vega v. Comm'r of Soc. Sec.*, 265 F.3d 1214, 1218 (11th Cir. 2001) (citation omitted) (finding same requirements to warrant

a remand under sentence six). New evidence must also "relate to the period on or before the date of the administrative law judge's ("ALJ") decision. . . . Evidence of deterioration of a previously-considered condition may subsequently entitle a claimant to benefit from a new application, but it is not probative of whether a person is disabled during the specific period under review." *Enix*, 461 F. App'x at 863 (citing *Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999)).

*Standard of Review – Sentence Four or Sentence Six*

To begin, the Court must determine whether a sentence four or sentence six review is appropriate. If the additional evidence was timely submitted to the Appeals Council for review, then the Court reviews the Appeals Council's decision under sentence four. If the additional evidence was not reviewed by the Appeals Council and submitted for the first time to this Court, then the Court must utilize a sentence six analysis. Although this test appears clear cut, it is not here. Plaintiff submitted some of the additional evidence at two different stages. The parties agree the additional evidence submitted to the Court for the first time requires a sentence six review and the Court concurs. The dispute arises regarding the additional evidence reviewed by an administrative appellate judge.

Plaintiff submitted some additional evidence (921 pages) to the Office of Appellate Operations on March 13, 2019, which was after the Appeals Council's December 14, 2018 final decision denying review. (Doc. 23, p. 7). Administrative

Appeals Judge Elizabeth Pendergrass issued a letter on December 2, 2019, concluding that this additional evidence did not "change the prior action." (Doc. 23-12). Plaintiff claims that because this evidence is part of the administrative record, and the Appeals Council accepted it, considered it, and then rendered a subsequent decision on December 2, 2019, the Court should review this additional evidence under sentence four. (*Id.*, p. 24).

The Commissioner argues this action is an appeal of the December 14, 2018 decision and the additional evidence was mistakenly included in the administrative record. (Doc. 23, p. 30). The Commissioner also argues that because the Appeals Council could not and did not review the additional evidence prior to its December 14 final decision, a sentence six standard applies.

The Court has jurisdiction to review only the "final decision" of the Commissioner. 42 U.S.C. § 405(g). As claimants are advised in the appropriate regulations, to obtain judicial review, a claimant must have "completed the steps of the administrative review process listed in paragraphs (a)(1) through (a)(4) of this section," (with the final step being the denial of a request for review by the Appeals Council), then "we will have made our final decision. If you are dissatisfied with our final decision, you may request judicial review by filing an action in a Federal district court." 20 C.F.R. § 1400(a)(5), *see also* 20 C.F.R. § 404.972 ("The dismissal of a request for Appeals Council review is binding and not subject to further

[administrative] review."); *Ingram*, 496 F.3d at 1262–67 (clarifying that a decision of the Appeals Council to deny review is a reviewable final decision subject to a sentence four modification, reversal, or remand)).

The Court therefore finds that it has jurisdiction to review the December 14, 2018 Appeals Council's final decision denying review, but has "no legal support for the proposition that a reviewable 'final decision'" extends to "a post-hoc letter from an administrative appeals judge stating that the Appeals Council would take 'no further administrative action.'" *Neal v. Colvin*, No. 2:12-CVi290-CSC, 2013 WL 3237779, *7-8 (M.D. Ala. June 25, 2013) (citing *Caulder*, 791 F.2d at 877 ("This court has held that when determining whether to remand a case to the [Commissioner] for consideration of new evidence, the mere statement by the [Commissioner] that the new evidence would not ultimately change the decision cannot be accorded any weight since the statement concerning the materiality of the evidence not in the certified administrative record is advisory at best."); *Cf. Califano v. Sanders*, 430 U.S. 99 (1977) (holding that neither the Administrative Procedure Act nor 42 U.S.C. § 405(g) confers subject matter jurisdiction on federal courts to review the Commissioner's refusal to reopen a prior determination)). Thus, the Court finds no legal authority to review the December 2, 2019 letter apparently declining a reopening of the case and will only review the December 14, 2018 Appeals Council's decision denying review. As such, because all of the additional evidence

was submitted after the Appeals Council's December 14, 2018 final decision, the additional evidence must be reviewed under sentence six.

*Sentence Six Review*

Plaintiff posits the new evidence demonstrates Claimant's cardiac condition was so severe during the relevant period of December 1, 2014 to March 29, 2018 that it caused his death on July 31, 2019. (Doc. 23, p. 28). This is the same condition for which Claimant filed for disability benefits. Although Plaintiff combines his sentence four and sentence six arguments, he essentially argues that if the ALJ had Claimant's recent medical records relating to the relevant time period, there is a reasonable probability of changing the administrative outcome because the ALJ himself questioned whether Claimant's condition "had taken a turn for the worse." (*Id.*, p. 24). Plaintiff asks the Court to reverse and remand this action for the agency to consider the new and material evidence. The Commissioner argues Plaintiff has not addressed or met the good cause requirement and has not established that the new evidence is material. (Doc. 23, pp. 30-32).

As stated above, to prevail under sentence six, a plaintiff must demonstrate the new evidence is material, and that there is good cause for the failure to submit the evidence at the administrative level. *Enix*, 461 F. App'x at 863. The Court begins by discussing good cause and then considers whether the new evidence is material.

*Good Cause*

Plaintiff must establish there is good cause for failing to submit the evidence at the administrative level. *Enix*, 461 F. App'x at 863. The ALJ's decision is dated March 29, 2018 and the Appeals Council's denial is dated December 14, 2018. (Tr., pp. 3, 817). Plaintiff's additional evidence includes hospitalization and medical records dated as early as March 2015 and through June 25, 2019—approximately one month before Claimant's death on July 31, 2019. (Docs. 23-4, 23-5, 23-6, 23-7, 23-8, 23-9, 23-10, 23-11).

Clearly, the evidence dated after the Appeals Council's final decision of December 14, 2018, could not have been submitted to the Commissioner prior to that decision. These records include medical records from Florida Heart Associates, medical records from Cape Coral Hospital, and Claimant's death certificate. (Docs. 23-4 through 23-11). The Court finds Plaintiff satisfied good cause as to all medical records dated after December 14, 2018.

However, all records dated prior to December 14, 2018, could have been submitted before the Appeals Council's final decision. Plaintiff first claims that he demonstrated good cause because the evidence was submitted to the Appeals Council in March 2019 for consideration and on December 2, 2019, the Appeals Council dismissed the case without considering the evidence. (Doc. 23, p. 27). But as explained above, the Court has jurisdiction to review the Appeal Council's

December 14, 2018 final decision and for that decision, the Appeals Council did not have any of these medical records even though they existed at the time. The Court finds this argument unpersuasive.

Plaintiff also contends that because he had new counsel, these medical records were not submitted earlier. But according to Plaintiff's records, new counsel was retained on May 22, 2018, and the Appeals Council's final decision was dated December 14, 2018. (Doc. 23-1). Plaintiff has not shown that counsel diligently attempted to submit these records during this nearly seven-month period. *See Jones v. Colvin*, No. 3:12-CV-718-J-25MCR, 2013 WL 3153844, *2 (M.D. Fla. June 19, 2013) (finding a change in counsel not sufficient to meet good cause standard). Thus, the Court finds Plaintiff fails to show good cause as to the medical records dated before December 14, 2018. The Court now turns to whether the medical records dated after December 14, 2018 satisfy the remaining sentence six requirements.

*New, Non-Cumulative and Material*

For Plaintiff to prevail, Plaintiff must also show the medical records dated after December 14, 2018 are new, non-cumulative, and material. *Enix*, 461 F. App'x at 863 (11th Cir. 2012). Plaintiff satisfies the new and non-cumulative requirement. These records were not in existence at the time of the ALJ's and Appeals Council's decisions, therefore they are new and non-cumulative. The contested issue is whether they are material.

Evidence is material if it is relevant and probative such that there is a reasonable possibility that it would change the administrative result. *White v. Astrue*, No. 8:12-cv-363-T-AEP, 2012 WL 12918361, *1 (M.D. Fla. Dec. 3, 2012) (citing *Milano v. Bowen*, 809 F.2d 763, 766 (11th Cir. 1987)). Here, the ALJ categorized Claimant's severe impairments as diabetes mellitus, history of right leg amputation, coronary heart disease, status-post bypass surgery, hypertension, and obesity. (Tr., p. 810). Although the ALJ concluded Claimant was not disabled within the meaning of the Social Security Act, the ALJ acknowledged: "**at this point, it is not clear whether claimant's condition has taken a turn for the worse or if the reported symptoms are transient**." (*Id.*, p. 815) (emphasis added). The ALJ based this contemplative statement on a then recent opinion of Dr. Jihad Khalil, a cardiologist who saw Claimant on December 13, 2017. (Tr. p. 1688). Dr. Khalil observed Claimant "now is showing more symptoms and complain[t]s so we will reevaluate his cardiovascular status with an echocardiogram as well as a Lexiscan stress testing to rule out any significant ischemia especially that the patient is being more symptomatic at this point." (*Id.*). These symptoms included malaise, fatigue, tiredness, leg swelling, shortness of breath on minimal activity, and dizziness. (*Id.*, pp. 1689-1690). Dr. Khalil diagnosed Claimant with A-fib, anemia, coronary artery disease, congestive heart failure, diabetes mellitus, pneumonia, nausea, and

hypertension. (*Id.*, pp. 1689-1690). In addition, Claimant testified at the hearing as to shortness of breath, nausea, dizziness, and balance issues. (Tr. p. 936).

The Commissioner argues this additional evidence does not show any additional limits that needed to be included in the RFC or would otherwise change the administrative decision. (*Id.*, pp. 32-33). Plaintiff claims the additional records from his June 17, 2019 hospitalization show continued shortness of breath, which could be angina equivalent, continued abnormal EKGs, fatigue, falls, and weakness. (*Id.*, p. 33). Plaintiff points out Claimant's death certificate shows he died of hypertension, peripheral vascular disease, diabetes type 2, and cerebrovascular accident and these conditions are the same conditions included in his application for disability benefits. (Doc. 23-11).

The June 17, 2019 hospital records show Claimant went to the hospital due to shortness of breath and generalized weakness, and had fallen and fractured his right humerus. (Doc. 23-5, p. 20). The hospital records reflect Claimant had multiple medical problems, including atrial fibrillation, coronary artery disease, congestive heart failure, hypertension, peripheral vascular disease, pneumonia, diabetes mellitus, right below-knee amputation, multiple falls at home, and episodes of confusion. (*Id.*, pp. 22, 54, 73, 78). These medical conditions and these symptoms, including those related to diabetes mellitus, coronary heart disease, and hypertension relate to Claimant's medical conditions prior to the ALJ's decision. This new

evidence responds to the ALJ's contemplation of whether Claimant's condition had taken a turn for the worse or if the then-reported symptoms were transient. These medical records show the symptoms were continuing.

The new evidence is relevant and probative of Claimant's alleged conditions, impairments, or symptoms for the time period for which Claimant sought benefits. *See Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986) (finding new evidence relevant and probative where it pertained to a condition that the plaintiff listed in his applications at the administrative level as a source of his disability and it provided a reasonable possibility of changing the administrative result because it consisted of medical evidence relating to one of the plaintiff's alleged symptoms). Moreover, while the new evidence is based on testing and a hospitalization after the ALJ's decision, the new evidence relates back to the period before the ALJ's decision because the records include information about medical conditions and symptoms pre-dating the ALJ's decision.

The Court agrees with Plaintiff—the new evidence is relevant and probative and is, therefore, material. The Court therefore finds there is a reasonable possibility the new medical records submitted to the Court for the first time would change the administrative result.

**B.    Whether the ALJ was properly appointed under the Constitution's Appointments Clause, and whether he had legal authority to hear and decide the case.**

Plaintiff argues the SSA's ALJs must be appointed by the President, a court of law, or Department head pursuant to the Appointments Clause of the United States Constitution, Art. II, § 2, cl. 2., and that at the time of Plaintiff's hearings, which took place on June 21, 2017 and March 19, 2018, the ALJ had not been appointed in conformity with this clause.[3] (Doc. 21, pp. 11-15). But the Commissioner argues Plaintiff forfeited this objection by neither presenting it to the ALJ nor raising it at any point during the administrative proceeding. (*Id.*, pp. 15-25).

There is a split of authority among the federal circuit courts of appeal as to whether a plaintiff forfeits an Appointments Clause challenge by not raising it during the SSA's administrative proceeding. *Compare Carr v. Commissioner of Social Security*, 961 F.3d 1267 (10th Cir. 2020) (forfeited), and *Davis v. Commissioner of Social Security*, 963 F.3d 790 (8th Cir. 2020) (forfeited), *with Cirko v. Commissioner of Social Security*, 948 F.3d 148 (3d Cir. 2020) (not forfeited), and *Ramsey v. Comm'r of Soc. Sec.*, No. 19-1579, 2020 WL 5200979 (6th Cir. Sept. 1, 2020) (not forfeited).[4] This Court finds more persuasive the holdings in *Carr* and *Davis* that

---

[3] To avoid any further Appointment Clause questions, ever since July 16, 2018, the Commissioner has appointed the SSA's ALJs and administrate appeals judges. *See* SSR 19-1P, 2019 WL 1324866, *2 (March 25, 2019).

[4] "While the Eleventh Circuit has yet to weigh in on the exhaustion issue, there are at least two pending appeals before it involving that threshold question." *Alfarano v. Saul*, No. 8:19-CV-2022-

such challenges are forfeited if not raised during the administrative proceeding. "Constitutional considerations, no matter how important or 'fundamental,' can be forfeited as Justice Scalia has emphasized: 'Appointments Clause claims, and other structural constitutional claims, have no special entitlement to review.'" *NLRB v. RELCO Locomotives, Inc.*, 734 F.3d 764, 798 (8th Cir. 2013) (quoting *Freytag v. Comm'r*, 501 U.S. 868, 893 (1991) (Scalia, J., concurring in part and concurring in the judgment)).

The SSA has approximately 1,600 ALJs, and requiring claimants to exhaust such an issue during the administrative process fulfills the twin purposes of issue exhaustion: it gives the agency an opportunity to correct the purported error (which it has), and it promotes both "judicial and agency efficiency." *Carr*, 961 F.3d at 1268 n.1, 1271, 1273. Further, a perverse incentive would be created "by allowing claimants to litigate benefits before an ALJ without objection and then, if unsuccessful, to secure a remand for a second chance based on an unexhausted argument about how the ALJ was appointed." *Davis*, 963 F.3d at 795 (citing *Freytag*, 501 U.S. at 895 (1991) (Scalia, J., concurring in part and concurring in the judgment)).

---

T-30CPT, 2020 WL 4808746 (M.D. Fla. Aug. 1, 2020), *report and recommendation adopted sub nom. Alfarano v. Comm'r of Soc. Sec.*, No. 8:19-CV-2022-T-30CPT, 2020 WL 4785455 (M.D. Fla. Aug. 18, 2020).

Moreover, it is the nearly unanimous opinion of the district courts within this circuit that Appointments Clause challenges in SSA cases are forfeited if not raised during the agency proceedings. *See Bryant v. Comm'r*, No. 5:19-cv-00121-HNJ, 2020 WL 4691363, *8 (N.D. Ala. May 20, 2020) (collecting cases), *report and recommendation adopted*, No. 5:19-cv-00121-CLS, 2020 WL 4437479 (N.D. Ala. June 19, 2020); *see also Fletcher v. Saul*, No. 8:19-cv-1476-T-23AAS, 2020 WL 4188210, *1 (M.D. Fla. July 21, 2020) ("The weight of district court authority in the Eleventh Circuit … holds that a petitioner waives a challenge to the constitutionality of an ALJ's appointment by failing to raise the challenge before the Social Security Administration."); *Bellamy v. Comm'r*, No. 19-81572, 2020 WL 5517520, *2 (S.D. Fla. Sept. 14, 2020) ("[D]istrict courts within the Eleventh Circuit have consistently determined that an Appointments Clause challenge must be raised before an ALJ's decision becomes final at the administrative level.").

Accordingly, because Plaintiff did not raise any Appointments Clause challenge during the administrative process, the Court finds Plaintiff forfeited this objection and cannot request remand on this basis.

### C.    Plaintiff's Remaining Arguments

Plaintiff's remaining argument for reversal questions whether the ALJ properly developed the record as to Plaintiff's ability to return to his past relevant work. (Doc. 23, pp. 15-19). But because it is recommended that the case be remanded

to consider the new evidence, it is further recommended that the Court need not opine on this first issue.

### D.     Conclusion

Upon consideration of the submission of the parties, the administrative record, and the additional evidence, the Court finds Plaintiff satisfied the necessary elements for a sentence six remand. It is **RESPECTFULLY RECOMMENDED** the decision of the Commissioner be **REVERSED and REMANDED** for further proceedings pursuant to sentence six of 42 U.S.C. § 405(g) and the Clerk of Court be directed to **ADMINISTRATIVELY CLOSE** the case and withhold entry of final judgment in this case pending resolution of the proceedings on remand.

Respectfully recommended in Chambers in Fort Myers, Florida on October 30, 2020.


*Nicholas P. Mizell*
NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE


### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the

Report and Recommendation. *See* 11th Cir. R. 3-1. **To expedite resolution, parties may file a joint notice waiving the 14-day objection period.**